Opinion filed December 17, 2015



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00145-CV

_____

## IN THE INTEREST OF A.Y.W., A CHILD

**On Appeal from the 318th District Court**
**Midland County, Texas**
**Trial Court Cause No. FM 57,408**

## M E M O R A N D U M   O P I N I O N

The trial court entered an order in which it terminated the parental rights of the parents of A.Y.W. The father timely appealed; the mother did not file an appeal. On appeal, the father presents six issues in which he challenges the sufficiency of the evidence. We affirm.

*Termination Standards and Findings*

Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2015). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine

whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001(b). In this case, the trial court found that Appellant committed five of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), (N), (O), and (Q). Appellant does not challenge the findings made pursuant to subsections (N), (O), and (Q). Accordingly, we need not address Appellant's first four issues, in which he challenges the findings made pursuant to subsections (D) and (E) because any one of the three unchallenged findings is sufficient to support termination as long as termination is in the child's best interest. *See id.* § 161.001(b). The trial court found that termination is in the child's best interest. *See id.* § 161.001(b)(2).

### Analysis as to Best Interest

Appellant challenges the best interest finding in his fifth and sixth issues. He asserts that the evidence presented at trial was legally and factually insufficient to establish by clear and convincing evidence that termination of his parental rights would be in A.Y.W.'s best interest. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the

emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The Department of Family and Protective Services became involved with the child in this case when they received a report of neglectful supervision by the mother shortly after the child's birth. The mother has a history of severe mental illness. The Department removed the child from the hospital when the child was two days old. At that time, the mother had nowhere to take the child when she left the hospital. The mother lived with her brother, and he did not want the mother to bring the child to his residence. The mother was unable to provide the Department with the name of anyone other than Appellant who could possibly keep the child.

When the Department's investigator contacted Appellant about picking the child up from the hospital, Appellant told the investigator that he was going to prison. At that time, Appellant was on trial for the offense of aggravated sexual assault. He was convicted of the lesser included offense of sexual assault, and his punishment was assessed at confinement for a term of fifteen years. The child was removed from the parents' care on the same day that Appellant was sentenced to imprisonment for fifteen years.

Appellant was incarcerated and therefore unable to care for the child. He testified at trial, "My plans are when I get out of incarceration, which I'm working

on, I'm planning to do what I'm supposed to do to take care of my child." Appellant, however, failed to provide the Department with any information regarding a suitable placement for the child until two days before the termination hearing resumed—when his attorney provided the Department with a telephone number for Appellant's brother. Given the untimeliness of Appellant's suggested placement, the Department was unable to determine whether Appellant's brother was a suitable placement or would even consider taking the child. At the time of trial, Appellant had not complied with the trial court's orders and had not completed the parenting packet or the "NA, AA packet" that the Department had sent him. Additionally, Appellant had not visited or "done anything" for an older child that he fathered with the mother; that child had "always" lived with a relative of the mother.

At the time of the termination hearing in this case, A.Y.W. was one year old and, thus, could not verbally express her desires. The evidence showed that she resided in a foster home that was a safe and appropriate placement. The child had been in that same foster home since she was two days old. The Department's conservatorship worker in this case testified that the child had bonded with her foster family and that the foster family wanted to adopt the child. The Department's plan for the child was for her to be adopted by her foster parents. At the time of the hearing, no family member or relative had contacted the Department about possible placement of the child. The child's guardian ad litem informed the trial court that he believed termination of both parents' rights would be in the best interest of the child "so that [the child] can reach permanency through adoption in her current placement."

The foster father testified that the child has a heart murmur but has "done very well" in the foster parents' household. He said that the child is "very happy" and has bonded with him and his wife, and he points out that they are the only

4

parents the child has ever known.  The foster father testified that he and his wife are able to meet all of the child's needs and that they would like to adopt the child. He believed that adoption would be in the child's best interest.

Based upon the *Holley* factors and the evidence in the record, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence.  *See Holley*, 544 S.W.2d at 371–72.  The trial court could reasonably have formed a firm belief or conviction that it would be in the child's best interest for Appellant's parental rights to be terminated.  We hold that the evidence is both legally and factually sufficient to support the trial court's best interest finding.  Appellant's fifth and sixth issues are overruled.

## *This Court's Ruling*

We affirm the trial court's order of termination.

JOHN M. BAILEY

JUSTICE

December 17, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.